## Case No. 9,217.

### The MARY J. VAUGHAN.

### The TELEGRAPH.

Ben. 47; 7 Int. Rev. Rec. 12; 1 Am. Law
T. Rep. U. S. Cts. 9; 2 Am. Law Rev. 577.] 1

District Court, S. D. New York. Dec., 1867.2

DAMAGES IN COLLISION CASES — LOSS OF CARGO—
.PLACE OF SHIPMENT—CURRENCY—INTEREST.

1. The measure of damages for cargo lost by a
collision, is its value at the time and place of its
shipment.

[Cited in The Aleppo, Case No. 158: Dyer v.
National Steam Nav. Co., Id. 4,225.]

2. Where cargo was put on board a canal boat,
in Canada, to be carried to New York, and was
lost in a collision on the Hudson river, the cur-
rency of the place of shipment being shown to
be United States gold coin, and the cargo, in
that coin, being shown to be worth a certain
number of dollars: *Held*, that the decree for
damages must be for that number of dollars.

[Cited in Baker v. Ward, Case No. 785.]

3. The interest must be allowed at the rate
of six per cent. per annum.

[Cited in The Aleppo, Case No. 158: Dyer v.
National Steam Nav. Co., Id. 4,225.]

[Cited in Parrott v. Knickerbocker Ice Co.,
46 N. Y. 369.]

This case came before the court on sepa-
rate exceptions taken by each of the claim-
ants of the two vessels sued, to the report of
a commissioner. The libel was filed in rem,
by the firm of Gordon, Bruce & McAuliff,
merchants of the city of New York, as con-
signees of certain barley, against the two
vessels, to recover damages for the loss of
the barley, caused by a collision which took
place on the Hudson river between New-
burgh and Cold Spring in October, 1864,
whereby a canal boat on which such barley
was laden was sunk. The canal boat in
tow of the propeller, was on a voyage from
Troy to New York. The steamboat was
bound up the river, with barges in tow, one
of which struck the canal boat so as to sink
her. The barley was laden on board of the
canal boat at St. Timothy, in Canada. On
the hearing, the court decreed a recovery
against both of the vessels sued, and re-
ferred it to a commissioner to ascertain and
compute the amount of the damages sus-
tained by the libellants. The barley was
laden at St. Timothy, October 7th, 1864.
Other barley, consigned to the same con-
signees, was laden at the same place at the
same time on board of another canal boat,
which was in tow of the same propeller at
the time of the collision, and arrived safely
at New York, and was sold there for $1.70 in
currency per bushel of 48 pounds, about Oc-
tober 27th, 1864. On this basis, the commis-
sioner fixed the value of the barley lost at
$1.70 per bushel, which, for 3,480 bushels,

1 [Reported by Robert D. Benedict, Esq., and
here reprinted by permission. 2 Am. Law Rev.
577, contains only a partial report.]

2 [Affirmed by circuit court; case unreported.
Decree of circuit court affirmed by supreme court
in 14 Wall. (81 U. S.) 258.]

the quantity fixed by him, amounted to $5,-
916.00. As the price of $1.70 per bushel at
New York, included, as an element going to
make it up, the usual commission of 2½ per
cent. to the consignee, which he would have
received for selling the barley, and the
freight on the barley, the commissioner de-
ducted from the $5,916.00, the sum of
$147.90, for 2½ per cent. commission on the
$5,916.00, and also the sum of $676.51 for
freight, being at the rate of 19 44/100 cents
per bushel, that is, 9 cents in gold per bush-
el, computing gold as worth 216 per cent.
premium in currency at the time of the col-
lision, the 9 cents in gold per bushel being
the rate of freight which the canal boat was
to receive for transporting the barley from
St. Timothy to New York. These deductions
left remaining the sum of $5,091.59, on which
the commissioner allowed interest to the
date of his report, two years and six months,
at the rate of 7 per cent. per annum, amount-
ing to $889.02. This addition of interest
made a total of $5,980.61, which the commis-
sioner reported as the damages. To this re-
port the claimants of both of the vessels
sued excepted, on the ground that the com-
missioner erred in fixing the value at $1.70
per bushel.

The claimants insisted that the commis-
sioner should not have taken the value at
New York or at the place of collision, but
should have taken it at the place of ship-
ment. The value at the time and place of
shipment was shown to have been from 67
to 72½ cents per bushel of 48 pounds, in
United States gold coin, which was the cur-
rency then in circulation at such place, and
the currency in which barley was then
bought and sold there. The libellants in-
sisted that the value at the place of ship-
ment was what the commissioner did, sub-
stantially, in fact, take, but that he took it in
the legal tender currency of the United
States, by taking such currency value at
New York, and deducting commission and
freight computed in the same currency. The
libellants also insisted that, as they sued
here, they were entitled to have the damages
computed in the current currency of the
United States, and that, if such damages
were computed in gold and were to be dis-
charged in currency, they would not receive
indemnity. The claimants insisted that they
were entitled to have the damages computed
at the value of the barley in the currency
prevalent at the place of shipment, and that,
as that currency was United States gold
coin, and did not require to be converted in-
to such coin, as would be the case with any
other foreign currency, they were entitled
to have the value in dollars so ascertained
stated as the damages, without reference
to any premium on gold, or to the fact that
the claimants could discharge such damages
in legal tender currency. The claimants
further insisted that, even if the value in
New York should be taken, it must be the

value in gold, found by reducing the currency value stated by the commissioner to gold value according to the rate of premium on gold which ruled at the time at New York. That gold value they stated at 79 1/6 cents per bushel.

S. E. Lyon, for libellants.

C. Van Santvoord, for the Vaughan.

F. J. Fithian, for the Telegraph.

BLATCHFORD, District Judge. The law is well settled, that, in case a contract to deliver goods is broken, the party is entitled to recover the full value of the goods at the place of delivery. And such value is to be computed in the currency prevalent at such place. This was the rule applied by Judge Shipman, in the case of The Patrick Henry [Case No. 10,805], cited in this court for the libellants. [In that case, the suit was on a bill of lading to deliver sovereigns at New York, and on proof that the sovereign was worth at that place at the time $7.05, in the currency then and there prevalent, the court decreed a recovery on that basis.][3] If, in this case, the action was on the bill of lading of the barley, for its non-delivery at New York, the proper rate of damages would be $1.70 per bushel. But, in cases of loss of cargo by collision, or other tort, the rule is equally well settled, that the value of the lost property at the time and place of its shipment is the measure of damages. In a case of illegal capture as prize, where the property is wholly lost to its owner, the damages allowed are only the prime value, or invoice price, and interest, and no supposed profits or allowance of damages, on the basis of a calculation of profits. Murray v. The Charming Betsey, 2 Cranch [6 U. S.] 64; Maley v. Shattuck, 3 Cranch [7 U. S.] 458; The Lively [Case No. 8,403]; Del Col v. Arnold, 3 Dall. [3 U. S.] 333; The Anna Maria, 2 Wheat. [15 U. S.] 327; The Amiable Nancy, 3 Wheat. [16 U. S.] 546, 560. The same rule of damages has been established by the supreme court for collision cases. In Smith v. Condry, 1 How. [42 U. S.] 28, a collision occurred in the port of Liverpool. The plaintiff offered to prove, at the trial, that his vessel was laden with salt, and was so delayed in her voyage by the collision, that the salt was worth considerably less at her port of destination, when she arrived there, than it would have been worth if she had not been so delayed, and claimed to recover such difference as damages. The court excluded the evidence, and the supreme court held that the evidence was properly excluded, and that, in cases of loss by collision, the injured party could not recover for the loss of probable profits at the port of destination, and that the value of the property at the place of its shipment was the measure of compensation. That was the rule adopted by this court in the case of

[3] [From 7 Int. Rev. Rec. 12.]

Adams v. The Ocean Queen [Case No. 64], before Judge Shipman, November, 1866, where the commissioner, in assessing the amount of damages caused to the cargo of a vessel by a collision, took as the measure of the price it would have brought at the port of destination, instead of the price paid at the port of shipment. This court held that the proper measure was the value of the property at the port of shipment, with interest at the rate of 6 per cent. per annum, from the time of the collision. The circuit court, on appeal (September, 1867), affirmed this decision. As the commissioner, in the present case, did not adopt, as the measure of damages, the value of the barley at the port of shipment, in the currency then and there prevalent, the first exception of the claimants to his report is allowed. The second, third, fourth, fifth, sixth, seventh and eighth exceptions of the claimants to his report necessarily fall with the allowance of their first exception, and no decision is necessary as to the points involved in those exceptions. They are neither allowed nor disallowed, but are ordered to be stricken from the record.

The damages computed on the principles above set forth will amount to a certain number of dollars in the money of the United States, and the decree will be for that number of dollars. The case will stand the same as if the barley had been shipped from England, in which event the value of the barley there, in sterling money of Great Britain, converted into the coined money of the United States, at the commercial value of such sterling money at the time in such coined money, would be the legal measure of damages, the only difference in the present case being, that, as the currency prevalent in Canada is the coined money of the United States, it does not require to be converted into such coined money. The rule is the same as if the action were one for the breach of a contract to deliver the like quantity of barley at a foreign port, whether in England or in Canada, or for the breach of a contract for the payment of money, made abroad and to be performed abroad, in a foreign currency. In a case of the latter description, this court has held that the proper rule of damages is the commercial value of the foreign money in the coined money of the United States, without any allowance for any premium on such coined money. The Blohm [Case No. 1,556]. The fact that, under the act of February 25, 1863 (12 Stat. 345), the debtor can discharge a judgment entered for the amount of damages so ascertained by paying it in the United States notes or legal tender currency, without any allowance for any depreciation in the value of such currency or notes, cannot affect the question as to the proper measure of damages, or the proper mode of computing them. A debt contracted in the United States before such notes were made a legal tender, and payable in the United States, can be dis-

charged by such notes, dollar for dollar, according to the tenor of the contract. Such is the law, and the privilege of so discharging any judgment which may be entered in this case for damages computed on the principles herein set forth, is one which the debtor is entitled to as an incident of the bringing of the suit in this forum. The creditor, if he comes into this jurisdiction to bring his suit, must accept the right to sue with the incident.

The ninth exception of the claimants must be allowed, as the proper rate of interest was six per cent. per annum, and not seven. [The exceptions on the part of the libellants are all of them overruled.][3]

An order must be entered disposing of the exceptions as above stated, and referring the case back to the commissioner to ascertain the damages on the principles above set forth, and report the same to the court.

[NOTE. Both parties appealed to the circuit court—the libellants on the question of damages. the respondents upon the collision. Considering further argument by the counsel necessary, the consideration of the case was postponed. Case No. 5,618.
[The circuit court finally affirmed the decree of this court (case unreported), and the cause was taken, on appeal, to the supreme court, where the decree of the circuit court was affirmed. Mr. Chief Justice Chase dissenting. 14 Wall. (81 U. S.) 258.]